Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000109
31-DEC-2015
08:50 AM

NO. CAAP-13-0000109

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JACQUELINE TAMMAN, Plaintiff-Appellee,
v.
SAMI TAMMAN, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 07-1-1120)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Leonard and Ginoza, JJ.)


In this post-decree divorce proceeding, Defendant-Appellant Sami Tamman (Sami) failed to physically appear for a scheduled trial after he was specifically warned that he would be defaulted if he failed to appear in person. The Family Court of the First Circuit (Family Court)[1] defaulted Sami, and it partially granted the motion for post-decree relief of Plaintiff-Appellee Jacqueline Tamman (Jacqueline) by imposing additional restrictions on Sami's visitation rights. The Family Court

---

[1] The Honorable Catherine H. Remigio presided over the proceedings relevant to this appeal.

entered its "Order Regarding Trial of January 4, 2013" (Visitation Order) on February 20, 2013. It entered its Findings of Fact and Conclusions of Law with respect to the Visitation Order on May 7, 2013.

Sami appeals from the Visitation Order and challenges the portion of the Visitation Order which partially granted Jacqueline's request to impose additional restrictions on his visitation rights.[2] Sami argues that the Family Court abused its discretion in defaulting Sami, denying Sami the opportunity to appear by phone, and failing to permit Sami's attorney to participate in the trial on Jacqueline's motion. Under the particular circumstances of this case, we affirm.

BACKGROUND

The termination of the marriage between Sami and Jacqueline has generated extensive litigation, including several decisions by our appellate courts. See Tamman v. Tamman, No. CAAP-10-0000032, 2011 WL 5926186 (Hawai'i App. Nov. 29, 2011), vacated by No. SCWC-10-0000032, 2012 WL 1035720 (Hawai'i Mar. 28, 2012); Tamman v. Tamman, CAAP-10-0000032, 2012 WL 1473426 (Hawai'i App. Apr. 27, 2012), cert. denied, Tamman v. Tamman, CAAP-10-0000032, 2012 WL 3240735 (Hawai'i Aug. 9, 2012); Tamman v. Tamman, CAAP-12-0000597, CAAP-12-0000718, 2013 WL 6095450 (Hawai'i App. Nov. 18, 2013). During the times relevant to this appeal, Sami resided in Switzerland and Jacqueline and the children resided in Hawai'i.

I.

On April 11, 2008, the Family Court held a short trial[3] on the issue of jurisdiction as well as on financial issues raised by Jacqueline in a motion for pre-decree relief. Sami appeared by telephone. The Family Court described problems with

---

[2] The Visitation Order also denied Sami's motion for post-decree relief without prejudice for lack of prosecution. Sami does not challenge the denial of his motion for post-decree relief

[3] The Honorable Kenneth E. Enright presided.

and expressed concerns about Sami's appearance by telephone:

> Please understand that you do not control this courtroom.
>
> We are at the mercy of the fact that we can't stop you from talking because you're on the phone . . . . You don't take over this courtroom and say whatever you want at any time you want.

In addition, Sami repeatedly complained about difficulty hearing, which led the Family Court to remark, "I'm afraid your choice to appear by telephone . . . has inherent problems for you."

At a hearing held in February 2009, Sami was allowed to appear by telephone. During the hearing, Sami accused the Family Court of extortion and blackmail, talked over the Family Court and attorneys for both sides, argued with and fired his own attorney, and then hung up on the Family Court. Based on these actions, the Family Court required Sami to be physically present for the next hearing.

In May 2010, the Family Court held a trial on custody and child support issues at which Sami was physically present. At the conclusion of the trial, the Family Court, on July 8, 2010, issued its Order Granting Custody, Visitation, and Support" (July 2010 Order). The Family Court awarded sole physical and legal custody to Jacqueline; granted Sami in-person visitation with his children pursuant to an established schedule as well as visitation through daily Skype video conferencing or telephone contact; ordered Sami to pay child support in the amount of $7,810 per month; and found that as of May 31, 2010, Sami owed $261,080 in outstanding child support. The Family Court issued Findings of Fact and Conclusions of Law in support of the July 2010 Order. With respect to Sami's failure to make child support and other payments, the Family Court found that Sami "possessed the means to comply with [its] child support, alimony, and housing orders. Nevertheless, [Sami] intentionally and inexcusably ignored the court's orders." (Emphasis added.) The Family Court also found that Sami was not credible based on his testimony at the May 2010 trial; that Sami deceived the Family

3

Court with respect to his financial status and position; and that Sami had intentionally misrepresented his income, assets, and debts. Sami appealed the Family's Court's July 2010 Order, which was ultimately affirmed on appeal. Tamman v. Tamman, No. CAAP-10-0000032 (Hawai'i App. Apr. 27, 2012).

II.

On November 21, 2011, Jacqueline filed a motion for post-decree relief regarding the terms of Sami's visitation and to enforce Sami's delinquent child support and other payments. On January 18, 2012, the Family Court held a hearing to set a trial date for Jacqueline's motion.[4] At the hearing, the Family Court set the trial for May 21 to 22, 2012, and it ordered that both Sami and Jacqueline be physically present, stating to Sami's attorney, "I'm not taking any excuses."

The Family Court subsequently bifurcated the trial on Jacqueline's motion into a trial regarding enforcement of Sami's support obligations to be held on May 21, 2012, and trial regarding the terms of Sami's visitation to be held on January 14, 2013. Prior to the May 21 trial, Sami filed his own motion for post-decree relief, which sought to change custody and reduce his child support obligations. On April 4, 2012, the Family Court held an order to show cause hearing on Sami's motion, but Sami and his attorney both failed to appear. The Family Court dismissed Sami's motion without prejudice for failure to prosecute and awarded attorney's fees to Jacqueline. Sami refiled this motion on May 2, 2012.

On May 18, 2012, the Family Court held a Rule 16 conference on Jacqueline's and Sami's pending motions.[5] This conference specifically addressed a request by Sami to appear at

---

[4] The Honorable Bode A. Uale presided.

[5] The Honorable Catherine H. Remigio presided

4

trial by telephone. The Family Court denied Sami's request. The minutes of the Rule 16 conference state:

> THE COURT REVIEWED THE MINUTES & PULLED THE CD OF THE 1/18/12 HEARING BEFORE JUDGE UALE. IT WAS VERY CLEAR BOTH PARTIES TO BE PRESENT AT TRIAL. <u>MR. TAMMAN NEEDS TO BE PRESENT OR HE WILL BE DEFAULTED</u>.

(Emphasis added.)

Sami appeared in person and testified at the May 21 trial regarding Jacqueline's motion to enforce Sami's payment obligations. After the trial, the Family Court, on May 25, 2012, entered a Judgment against Sami and in favor of Jacqueline in the amount of $420,338 for delinquent child support and temporary alimony owed to Jacqueline through April 30, 2012.

III.

On July 25, 2012, the Family Court held a hearing to determine whether Sami should be held in civil contempt for failure to comply with its July 2010 Order, which ordered Sami to pay child support and other payments. Sami was expected to appear in person at this hearing, but failed to appear. Sami's counsel represented at the hearing that Sami had broken his nose and pursuant to doctor's orders, was unable to fly to Hawai'i. The Family Court continued the hearing until July 30, 2012, to give Sami time to travel to Hawai'i, but Sami failed to appear in person at the continued hearing.

On July 31, 2012, the Family Court entered "Findings and Judgment of Civil Contempt of Court" against Sami. The Family Court found by clear and convincing evidence that Sami "presently has the ability and power to comply" with the order of the Family Court to pay child support and alimony, but is refusing to comply with the order without any privilege, right, or lawful basis. The Family Court therefore adjudged Sami in civil contempt of court in violation of Hawaii Revised Statutes (HRS) § 710-1077(6). Based on Sami's "current ability and refusal to cease the contumacious conduct," the Family Court ordered that he be committed to the custody of the Director of

5

Public Safety, Intake Service Center, and held there until he "agrees to comply with the court order."

The Family Court subsequently issued additional findings of fact and conclusions of law regarding its adjudication of Sami in civil contempt of court. Among other things, the Family Court found and concluded that Sami had made no payments toward the support arrearages established in its July 2010 Order; that "[i]n considering [Sami's] demeanor, manner of testifying, and candor, in addition to the substance of his testimony," Sami "was not credible about his income and assets"; and that "[Sami] intentionally and inexcusably ignored the court's orders."

Sami appealed from the Family Court's $420,338 "Judgment for Delinquent Child Support and Alimony" and its "Findings and Judgment of Civil Contempt of Court," which were both affirmed by this court. Tamman v Tamman, CAAP-12-0000597, CAAP-12-0000718, 2013 WL 6095450 (Hawai'i App. Nov. 18, 2013).

On August 23, 2012, Sami failed to appear for a custody evaluator review hearing. The Family Court's minutes state that it reserved any consequences for Sami's failure to be present at the hearing. On December 27, 2012, Sami failed to appear for a settlement conference.

IV.

On January 14, 2013, the case was called for trial on Jacqueline's motion to modify the terms of visitation and Sami's motion to change custody and reduce child support. Sami failed to appear in person for the trial, and the Family Court placed this fact on the record. Although acknowledging that "two judges have said that [Sami] cannot appear by phone in this case," Sami's counsel moved to allow Sami to appear by phone. Sami's counsel contended that a telephone appearance was necessary because Sami had informed counsel that: (1) Sami did not have the money to travel due to the Family Court's Judgment and Jacqueline's attempts to enforce it which had tied up Sami's finances; and (2) Sami had sustained injuries to his ribs and

6

lungs on January 2 which prevented him from traveling. Sami's counsel offered no evidence to support Sami's claims.

The Family Court denied Sami's request to appear by telephone, noting that it had been made "very clear . . . several times" that Sami had been "denied the request to appear by phone." Jacqueline moved that Sami be defaulted for his failure to appear. The Family Court granted Jacqueline's motion, stating that Sami "has had a lot of warning that he could be defaulted if he does not appear." After defaulting Sami, the Family Court did not permit Sami's counsel to participate and excused Sami's counsel from the trial. The Family Court then heard testimony on Jacqueline's motion to modify Sami's visitation.

The Family Court subsequently filed its Visitation Order, in which it memorialized its decision to deny Sami's oral motion to appear by phone and to grant Jacqueline's oral motion to find Sami in default for failure to appear. The Visitation Order granted in part and denied in part Jacqueline's motion to modify the terms of Sami's visitation.[6/] The Family Court reduced Sami's Skype/telephone visitation to once a week, although it allowed the children to initiate a call with Sami at any time. It also ordered a three-month suspension of all physical visitation, after which visitations would be supervised, not to exceed two hours in duration, and scheduled according to the prior schedule set by the Family Court. In its findings of fact regarding the Visitation Order, the Family Court, among other things, found that "[Sami] was aware through the court's orders and directives dating back to January 18, 2012, that he was required to physically appear at the January [14, 2013] trial, and that failure to appear would result in default."

DISCUSSION

Sami argues that the Family Court abused its discretion in defaulting him, denying him the opportunity to appear by

---

[6/] The Visitation Order also denied without prejudice for lack of prosecution Sami's motion to change custody and reduce child support.

phone, and failing to permit his attorney to participate in the trial on Jacqueline's motion. We disagree.

I.

Courts have inherent power to control the litigation process, to curb abuses, and to promote a fair process, which includes the imposition of the sanction of dismissal in severe circumstances. See Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994). In this case, the Family Court properly exercised its inherent power to control the litigation process and promote a fair process by requiring Sami to appear in person for trial. The record shows that allowing Sami to appear by telephone on prior occasions had been disruptive and detrimental to the proceedings. The Family Court had been unable to control Sami in his phone appearances: he refused to stop talking, talked over the other participants, and on one occasion hung up on the Family Court. Sami's appearance in person would also enhance the Family Court's ability to assess his credibility, which would likely be important to the Family Court's decision on the visitation claims before it. Finally, the Family Court had adjudged Sami in civil contempt of court for his contumacious conduct in refusing to pay his support obligations, and allowing him to appear by telephone would facilitate his continued evasion of his support obligations.

II.

The sanction of default is a harsh one and is not favored. See In re TW, 124 Hawai'i 468, 472, 248 P.3d 234, 238 (App. 2011). However, a trial court has discretion in imposing sanctions, including default, for violations of its orders, and we review the court's imposition of sanctions for abuse of discretion. See Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 71, 229 P.3d 1133, 1136 (2010); Berry v. Berry, 127 Hawai'i 243, 254, 277 P.3d 968, 979 (2012). "In determining whether the sanction of dismissal constituted an abuse of discretion, we look to the entire procedural history of the case." Long v. Steepro, 213 F.3d 983, 986 (7th Cir. 2000). Although "[t]he choice of

8

appropriate sanctions is primarily the responsibility of the [trial] court, . . . the sanction selected must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." Id. (internal quotation marks and citation omitted). "A deliberate and contumacious disregard of the court's authority will justify application of [the] severest of sanctions [of striking a party's pleadings], as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." Kamhi v. Waterview Towers Condo. Ass'n, 793 So.2d 1033, 1036 (Fla. Dist. Ct. App. 2001).

III.

In this case, the Family Court sanctioned Sami for his violation of its order to physically appear by not only precluding Sami from participating in the trial on Jacqueline's motion, but also precluding Sami's counsel from participating. Ordinarily, we would look with disfavor on a trial court's precluding a party's counsel from participating in a trial-like proceeding as a sanction for the party's failure to physically appear. We believe, however, that this case presents circumstances that are atypical and egregious.

In light of the particular circumstances of this case, its procedural history, and the totality of Sami's actions and conduct, we cannot say that the Family Court abused its discretion in sanctioning Sami for violating the Family Court's order to appear in person by defaulting Sami and not permitting his counsel to participate in the trial on Jacqueline's motion. The record shows that prior to the January 14, 2013, trial, the Family Court had found that Sami had "intentionally and inexcusably ignored the court's orders"; that Sami was not credible; that Sami had deceived the Family Court and intentionally misrepresented his financial condition; that he engaged in "contumacious conduct" in refusing to pay his support obligations which he had the ability and power to pay; and that he was in civil contempt of court and subject to incarceration

9

until he complied with the Family Court's support orders.  Sami had failed to appear at other proceedings at which his attendance in person was expected, including the contempt hearing that had been continued at his request.  In addition, he was given ample warning that his appearance in person at the January 14, 2013, trial was required.  While Sami's counsel stated at the January 14 trial that Sami claimed he could not attend in person because Sami did not have enough money and was too injured to travel, no evidence was offered to support these claims.  Nor did Sami present evidence to support these claims after the January 14 trial in connection with a motion for reconsideration or to set aside the default.

Under these circumstances, we conclude that the Family Court did not abuse its discretion in defaulting Sami and precluding Sami's attorney from participating in the trial on Jacqueline's motion.  Although the Family Court imposed these sanctions, it still required Jacqueline to meet her burden of proving her entitlement to the modification of Sami's visitation rights, and it only granted Jacqueline's motion in part.  The sanctions imposed by the Family Court in the exercise of its discretion were justified by the totality of Sami's "deliberate and contumacious" disregard of the Family Court's authority and his "willful disregard or gross indifference to" the Family Court's orders.  See Kamhi, 793 So.2d at 1036; Berry, 127 Hawai'i at 250, 253-54, 277 P.3d at 975, 978-79 (rejecting husband's claim that the Family Court abused its discretion in entering default against him "for failing to travel from Florida to Hawai'i, instead of allowing him to appear [at a rescheduled settlement conference] by telephone," where husband had notice that the Family Court would default him if he failed to appear).[2]

---

[2] Although Sami relies on Long v. Long, 101 Hawai'i 400, 69 P.3d 528 (App. 2003), that case is clearly distinguishable.  Unlike in Long, Sami had prior notice that his failure to appear in person would result in default.  In addition, Sami's behavior and history of misconduct was far more egregious than the behavior of the appellant in Long.

10

We also conclude for the reasons previously discussed and under the circumstances of this case, that the Family Court did not abuse its discretion in denying Sami's oral motion, made on the day of trial, to appear by telephone.

CONCLUSION

For the foregoing reasons, we affirm the Family Court's Visitation Order.

DATED: Honolulu, Hawai'i, December 31, 2015.

On the briefs:

Samuel P. King, Jr.
For Defendant-Appellant

Ronald Y. Amemiya
Jonathan W. Ware, *pro hac vice*
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge